Electronically Filed
Supreme Court
SCAP-13-0000765
06-APR-2016
07:45 AM

SCAP-13-0000765

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

THE SIERRA CLUB and SENATOR CLAYTON HEE,
Petitioners/Appellants-Appellants,

vs.

CASTLE & COOKE HOMES HAWAI'I INC.; THE LAND USE COMMISSION OF THE
STATE OF HAWAI'I; OFFICE OF PLANNING, STATE OF HAWAI'I;
DEPARTMENT OF PLANNING AND PERMITTING,
Respondents/Appellees-Appellees.

_____

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-13-0000765; CIV. NO. 12-1-1999)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, and McKenna, JJ., and Circuit
Judge Browning, in place of Acoba, J., recused;
and Pollack, J., dissenting)

I.  Introduction

In this appeal, Appellants Sierra Club and Senator Clayton Hee oppose the Land Use Commission's ("LUC") reclassification of approximately 767.649 acres of Appellee Castle & Cooke Homes Hawai'i, Inc.'s ("Castle & Cooke") land from the state agricultural land use district to the state urban land use district.  The land is slated for development of Castle &

1

Cooke's Koa Ridge Makai and Waiawa projects.  Appellants sought review of the LUC's decision by the Circuit Court of the First Circuit ("circuit court"),[1] which dismissed their appeal.

Appellants raise the following points of error:

> 1.  The trial court erred by refusing to uphold the requirements of Article XI, Section 3, of the Hawaii State Constitution.
> 2.  The decision of the State Court to uphold the Findings of Fact, Conclusions of Law and Decision and Order of the Land Use Commission is in violation of Act 183, HRS §[§] 205[-]41-52.
> 3.  The decision of the State Court to uphold the Findings of Fact, Conclusions of Law and Decision and Order of the Land Use [C]omission is in violation of HAR § 15-15-77.

Although there are three points of error, Appellants essentially make two points.  First, they argue that the LUC should be required to "stay" the reclassification of the potentially important agricultural land at issue pending formal designation of Important Agricultural Lands ("IALs") in each county,[2] pursuant to the intent behind Article XI, Section 3 of the Hawai'i Constitution, as implemented by Act 183 (points of error one and two).  Second, they argue that the circuit court should have ruled that the LUC improperly weighed the evidence supporting its findings that the reclassification (1) would not substantially impair agricultural production, and (2) was

---

[1]    The Honorable Rhonda A. Nishimura presided.
[2]    Act 183 directed the counties to formally identify IALs, then submit IAL land maps to the county councils for decision-making.  The county councils then transmit the maps to the LUC, which then finally designates IALs.  See Hawai'i Revised Statutes ("HRS") §§ 205-47(a), (e), -48, and -49(a)(Supp. 2005).  To date, formal IAL designation has not been completed.  See Sierra Club v. D.R. Horton-Schuler Homes, 2015 WL 9306955, *14 (2015); see also http://mapoahuagland.com/about/faq (last visited Apr. 5, 2016).

reasonably necessary for urban growth, pursuant to Hawai'i

Administrative Rules ("HAR") § 15-15-77(b)(6) (effective 2000-

2013) (point of error three).  HAR § 15-15-77(b)(6) requires the

LUC to "specifically consider" the following when reclassifying

agricultural land:

> Lands in intensive agricultural use for two years prior to
> date of filing of a petition or lands with a high capacity
> for intensive agricultural use shall not be taken out of
> the agricultural district unless the commissions finds
> either that the action:
> (A) Will not substantially impair actual or potential
> agricultural production in the vicinity of the subject
> property or in the county or State; or
> (B) Is reasonably necessary for urban growth.

We affirm the circuit court's decision and order, which

affirmed the LUC's decision and order, and which dismissed

Appellants' appeal.  This court has already recently held that,

pursuant to Save Sunset Beach Coalition v. City & County of

Honolulu, 102 Hawai'i 465, 476, 78 P.3d 1, 12 (2003), Article XI,

Section 3, standing alone, is not self-executing, and its

constitutional history as well as the legislative history of Act

183 do not reveal an intent to require the LUC to delay

reclassifying agricultural land pending formal designation of

IALs.  See Sierra Club, 2015 WL 9306955, *1.  Therefore, this

opinion does not further address Appellants' first and second

points of error; rather, this opinion focuses on Appellants'

third point of error, whether the reclassification violated HAR

§ 15-15-77(b)(6).  As to that point of error, we conclude that

substantial evidence supported the LUC's findings that the reclassification of the land at issue in this case satisfied HAR § 15-15-77(b)(6).  The evidence in support of these findings was adduced through Castle & Cooke's witnesses, whose expertise and credibility the Appellants did not challenge.

## II.  Background

### A.  Land Use Commission Proceedings

#### 1.  Castle & Cooke's Petition

On October 3, 2011, Castle & Cooke filed a Petition for Land Use District Boundary Amendment ("Petition") before the LUC.  Castle & Cooke sought to reclassify approximately 767.649 acres of land at Waipio and Waiawa, on the island of Oahu, from the agricultural district to urban district to develop the Koa Ridge Makai and Waiawa Project (the "Project").

Castle & Cooke described the Koa Ridge Makai portion of the Project as follows:

> Koa Ridge Makai is planned to consist of approximately 3,500 residential dwelling units comprised of a mix of single-family and multi-family residential units, light industrial, commercial and community uses.  A mixed-use "Village Center" is planned to include a health care component, residential, commercial, and community center. Parks and open space are also planned throughout Koa Ridge Makai, together with churches, recreational centers, and schools.

Castle & Cooke described the Waiawa portion of the project as consisting of "approximately 1,500 residential units comprised of a mix of single-family and multi-family residential units, a community center with neighborhood retail, a neighborhood park,

and an elementary school.  Parks and open space are also planned throughout Waiawa."  According to its Incremental Development Plans, Castle & Cooke plans to develop Koa Ridge Makai first, then Waiawa.[3]  The Project lands are located within the Urban Community Boundary ("UCB") of the Central Oahu Sustainable Communities Plan ("CO SCP").  According to the Final Environmental Impact Statement prepared for the Project, the CO SCP focuses "future residential development on master planned suburban communities within" the UCB.  The UCB "was established to provide long-range protection from urbanization for 10,500 acres of prime and unique agricultural lands and for preservation of open space, while providing adequate land for residential, commercial and industrial uses needed in Central O'ahu for the foreseeable future."

> ## 2.    Other Parties and Intervenors to the Petition Proceedings

As the district boundary petition involved land areas greater than 15 acres, pursuant to HRS § 205-4(e)(1) (Supp. 2005), "the office of planning[] and the county planning department" were mandated to appear as parties to "make recommendations relative to the proposed boundary change."  The Office of Planning ("OP") and the City and County of Honolulu

---

[3]    Under HAR § 15-15-78 (effective 2000-2013), the LUC can reclassify lands incrementally if "full development of the subject property cannot substantially be completed within ten years after the date of" the LUC's approval.

Department of Planning and Permitting ("DPP") generally supported the Petition.  The LUC granted the Sierra Club's and Senator Clayton Hee's petitions to intervene.  They opposed the Petition and sought to protect the Project lands from urbanization.

### 3.   Evidence Presented at the LUC Hearings on the Petition

The LUC held three evidentiary hearings on the Petition in early 2012.  Relevant to the issues on appeal, the several individuals testified, and their testimony is summarized below.

### a.   Testimony of Ann Bouslog

Castle & Cooke called Ann Bouslog, an expert in the fields of real estate, market assessment and economic impacts.  She testified that the Project was necessary for urban growth in the region as follows:  "O'ahu has an acute shortage of housing suitable for primary residents. . . . And this shortfall is expected to increase in the coming decades.  Even with complete buildout of all identified planned and entitled units as of late last year, O'ahu could be short some 30,000 units of primary housing by the year 2030."  Bouslog projected that there would be a shortage of "at least 6500" homes "in Central O'ahu based on DPP's own 2009 projections. . . ."  She testified that Central O'ahu is a popular residential location and projected that all 5000 of the Project's homes would be bought between 2023 and

2026.  When offered the chance to cross-examine Bouslog, the Appellants' attorney stated, "No questions for this witness."

### b.   Testimony of Bruce Plasch

Castle & Cooke also called Bruce Plasch, an expert in agriculture and economic assessment.  He testified that the contraction of plantation agriculture released 177,000 acres for diversified agriculture by January 2010, with about 15,000 acres still available on O'ahu.  2,500 acres were in upper Kunia, 8,500 acres were on the North Shore, over 2,700 acres were near Kahuku, and about 1,700 acres were scattered throughout O'ahu.  According to Plasch, "most of these lands have soil ratings, solar radiation, and access to irrigation water similar to Koa Ridge Makai and Castle & Cooke Waiawa."  Plasch testified that 42,600 acres of land on O'ahu is of high-quality outside the City's urban growth boundaries.  Of that land, only 12,000 acres was being farmed in 2010, leaving nearly 30,000 acres available for diversified agriculture.  To farm these lands, which were once irrigated, Plasch testified, water infrastructure would need to be improved.  Plasch also testified that the current agricultural tenants on the Project lands, Aloun Farms and Flying R Livestock Company, both secured replacement lands.

### c.    Aloun Farms' Letter of Support for the Petition

Aloun Farms' Principals, Alec and Mike Sou, submitted a letter in support of the Petition; it stated that their 335-acre replacement lands[4] have "productive soils, a reliable source of water and existing irrigation systems which will support the cultivation of [Aloun Farms'] variety of crops."

### d.    Testimony of Hector Valenzuela

The Appellants submitted into evidence the written testimony of Hector Valenzuela, a University of Hawai'i professor and vegetable crop extension specialist.  He did not support the Petition because it "would represent a permanent loss to Oahu and to the state of a substantial portion of the previous remaining prime agricultural land available for diversified agricultural production."

### 4.    The LUC's Findings of Fact, Conclusions of Law, and Decision and Order

On June 21, 2012, the LUC approved the Petition by a vote of 7-0.  The LUC issued its Findings of Fact, Conclusions of Law, and Decision and Order.  With regard to whether the reclassification would impair agricultural production and was reasonably necessary for urban growth, the LUC made the following findings:

---

[4]    In addition to the 335 acres Castle & Cooke provided to Aloun Farms, Dole Pineapple Plantation also offered Aloun Farms a lease over 332 additional acres.

8

NEED FOR THE PROPOSED DEVELOPMENT.

68.  O'ahu has an acute shortage of housing suitable for primary residents, and this shortfall is projected to continue to increase by 2030 based on growth projections. Even with complete buildout of all identified planned and entitled units as of July 2008, the shortfall will be approximately 30,000 units by 2030.  This is based on DPP's 2009 population projections (which assume the State Department of Business, Economic Development, and Tourism's 2035 Series, published in 2008) and an updated inventory of Commission-entitled and planned potential future developments islandwide.

69.  There is a need to entitle at least 6,500 more units in Central O'ahu.

70.  Central O'ahu has proven to be a popular residential location due to its cool, upland climate, relative proximity to the island's main employment centers, high quality master-planned communities, and affordability.

71.  The Project is estimated to close an average of 200 to 425 residential units per year, and complete absorption of the Projects 5,000 residential units is projected to occur between 2023 and 2026.

. . . .

IMPACTS UPON RESOURCES OF THE AREA
Agricultural Resources

. . . .

87.  In anticipation of the Project and to mitigate the impacts of development on agricultural operations, Petitioner arranged with Dole Foods to issue a lease to Aloun Farms for approximately 335 acres of former pineapple land located north of the Dole Plantation.  The lease term is for ten years, with a five-year renewal option.  In addition, approximately 332 acres of abutting lands have been offered to Aloun Farms.  The approximately 667 acres of land being offered as replacement land is twice as much land as Aloun Farms is farming currently at Koa Ridge.  The 335 acres currently leased by Aloun Farms has sufficient access to water from the Tanada Reservoir, which provides fresh clean water to the replacement lands and is distributed through an existing irrigation delivery system throughout the site. Coordinated efforts to improve the delivery of year round supply of water are being worked out with Dole Foods, and a plan acceptable to Aloun Farms has been clearly laid out in Aloun Farms' water contract. Aloun Farms has begun site [sic] and the soil amendment process of the 335-acre replacement site and anticipates its first crops in the summer of 2012.  The replacement lands will allow Aloun Farms to grow a variety of crops and maintain similar production, revenues, operating costs,

9

delivery costs, employment, and payroll as would occur at Koa Ridge Makai.

88. Because of the replacement lands with a source of water and existing irrigation that have been made available and because Petitioner stopped charging Aloun Farms rent at Koa Ridge which saves Aloun Farms $129,000 annually, the Project is not anticipated to have a significant impact on the operation of Aloun Farms. However, some adjustments in varieties and cultivation practices might be required due to different agronomic conditions (e.g., soils, temperature, solar radiation, elevation and rainfall). Also, Aloun Farms will incur the cost of preparing the former pineapple field for farming vegetable crops.

. . . .

94. The contraction and closure of sugarcane and pineapple plantations have released farmland that can now be used for other crops. As of January 2010, over 177,000 acres remained available statewide for farming.

95. On Oʻahu, over 15,000 acres of former plantation land remain available including approximately 2,500 acres in upper Kunia, approximately 8,500 acres on the North Shore, over 2,700 acres near Kahuku, and approximately 1,700 acres scattered throughout other parts of the island. The word "available" refers to land not being farmed.

96. The Island of Oʻahu has approximately 42,600 acres of high quality farmland outside of the City's Urban Growth Boundaries, excluding lands under military control and lands in Kahuku that are scheduled to become a wildlife refuge. In 2010, an estimated 12,000 acres were farmed on Oʻahu, some of which was land within the Urban Growth Boundaries. Assuming that the farms in the Urban Growth Boundaries eventually relocate to land outside of the Urban Growth Boundaries, over 30,000 acres of good farmland on Oʻahu will remain available for growing additional crops (42,000 acres - 12,000 acres).

. . . .

113. Reclassification and development of the Petition Area will not have an adverse impact on agricultural resources nor on actual or potential agricultural production in the vicinity of the Petition Area or in the City or State. There is sufficient land available on Oʻahu and in the State to accommodate the loss of land for the Project and to accommodate diversified agriculture.

The LUC made the following Conclusions of Law relevant to this appeal:

10

1. Pursuant to HRS chapter 205 and the Commission rules under HAR chapter 15-15, and upon consideration of the Commission decision-making criteria under HRS section 205-17, the Commission finds upon the clear preponderance of the evidence that the reclassification of Koa Ridge Makai, Increment 1, consisting of approximately 576.435 acres of land, situated at Waipiʻo, Island of Oʻahu, State of Hawaiʻi, TMKs: 9-4-06: portion of 1, portion of 2, portion of 3, portion of 5, 38, and portion of 39 and 9-5-03: portion of 1 and portion of 4, shown approximately on Exhibit "A" attached hereto and incorporated by reference herein, from the State Land Use Agricultural District to the State Land Use Urban District, and subject to the conditions stated in the Order below, conforms to the standards for establishing the boundaries of the State Land Use Urban District, is reasonable, not violative of HRS section 205-2 and is consistent with the policies and criteria established pursuant to HRS sections 205-16, 205-17, and 205A-2.

2. The Commission also finds upon the clear preponderance of the evidence that the reclassification of Castle & Cooke Waiawa, Increment 2, pursuant to the incremental districting under section HAR 15-15-78, consisting of approximately 191.214 acres of land, situated at Waiawa, Island of Oʻahu, State of Hawaiʻi, TMKs: 9-4-06: portion of 29 and portion of 31 and 9-6-04: 21, shown approximately on Exhibit "A" attached hereto and incorporated by reference herein, from the State Land Use Agricultural District to the State Land Use Urban District, and subject to the conditions stated in the Order below, conforms to the standards for establishing the boundaries of the State Land Use Urban District, is reasonable, is not violative of HRS section 205-2, and is consistent with the policies and criteria established pursuant to HRS sections 205-16, 205-17, and 205A-2.

. . . .

6. Article XI, Section 3, of the Hawaiʻi State Constitution states the following in full: "The State shall conserve and protect agricultural lands, promote diversified agriculture, increase agricultural self-sufficiency and assure the availability of agriculturally suitable lands. The legislature shall provide standards and criteria to accomplish the foregoing. Lands identified by the State as important agricultural lands needed to fulfill the purposes above shall not be reclassified by the State or rezoned by its political subdivisions without meeting the standards and criteria established by the legislature and approved by a two-thirds vote of the body responsible for the reclassification or rezoning action."

7. HRS section 205-41 declares that there is a compelling State interest in conserving the State's agricultural land resource base and assuring the long-term availability of agricultural lands for agricultural use to achieve the

11

purposes of Article XI, Section 3, of the Hawai'i State
Constitution.

The LUC's Decision and Order reclassified the Petition
lands from the state agricultural land use district to the state
urban land use district, subject to preconditions that are not
relevant on appeal.

## B.  Circuit Court Appeal

Appellants filed an agency appeal with the circuit court.
Relevant to this appeal, the Appellants argued that the LUC's
decision and order violated HAR § 15-15-77(b)(6),[5] which requires
the LUC to "specifically consider" the following when
reclassifying agricultural land:

> Lands in intensive agricultural use for two years prior to
> date of filing of a petition or lands with a high capacity
> for intensive agricultural use shall not be taken out of
> the agricultural district unless the commission finds
> either that the action:
> (A) Will not substantially impair actual or potential
> agricultural production in the vicinity of the subject
> property or in the county or State; or
> (B) Is reasonably necessary for urban growth.

The Appellants focused on subsection (A), arguing, "Despite
overwhelming and dispositive evidence to the contrary, the
Findings conclude that there are sufficient alternative
agricultural lands and that agriculture on Oahu will not be

---

[5]    The Appellants also argued that the LUC's decision and order violated
HAR § 15-15-77(a), which requires district boundary amendments to conform to
the Hawai'i State Plan.  The Appellants abandoned this issue upon transfer to
this court, as this issue was not raised as a point of error in their Opening
Brief, and was referenced for the first time in their Reply Brief.  This
argument has therefore been waived.  See Matter of Hawaiian Flour Mills,
Inc., 76 Hawai'i 1,14 n.5, 868 P.2d 419, 432 n.5 (1994) (citing Hawai'i Rules
of Appellate Procedure Rule 28(b)(4)).

harmed by the reclassification."  They argued that the LUC's decision was "based on the unsubstantiated assertion that there is a large amount of available farm land on Oahu and thus taking this proven and productive land out of production will not be harmful to agriculture on Oahu or in Hawaii in general." Specifically, the Appellants contended that the replacement lands lack State funding for water infrastructure, and lack a track record of producing crops like those grown on the Petition lands.  As to subsection (B), whether the reclassification was necessary for urban growth, the Appellants claimed in a footnote that "there was very unconvincing testimony of the need for an additional 5000 housing units in this location. . . ."

In its Answering Brief, Castle & Cooke counter-argued that the reclassification complied with HAR § 15-15-77(b)(6).  Castle & Cooke argued that the LUC was provided with substantial evidence that the reclassification "will not substantially impair actual or potential agricultural production" and "is reasonably necessary for urban growth."  As to the "agricultural production" prong, Castle & Cooke pointed to Plasch's testimony about the thousands of acres that had become available for diversified agriculture upon the contraction of plantation agriculture.  Castle & Cooke also noted it had designated 679

acres as IAL in other parts of Oʻahu[6] and provided its current tenant, Aloun Farms, with replacement land for its farming operations.  To refute the Appellants' suggestion that the replacement land lacks necessary water infrastructure, Castle & Cooke cited to Aloun Farms' letter of support, that noted their replacement land "has productive soils, a reliable source of water and existing irrigation systems which will support the cultivation of [their] variety of crops. . . ."  Thus, Castle & Cooke maintained, reclassification of the petition lands "would not substantially impair actual or potential agricultural production."

As to the "urban growth" prong, Castle & Cooke argued that the LUC was provided with substantial evidence that the reclassification was necessary for urban growth from, inter alia, Bouslog, who testified about Central Oahu's acute housing shortage for primary residents.  Castle & Cooke pointed out that the Appellants did not dispute Bouslog's testimony or cross-examine her during the LUC hearings.  They also failed to "provide any witness or documents to the LUC that would contradict the evidence presented during the hearings that the

---

[6]     During the pendency of the Petition proceedings, Castle & Cooke successfully obtained LUC designation of this land as IAL through the farmer/ landowner-initiated IAL designation procedure set forth in HRS § 205-44 (Supp. 2005).  This procedure is separate from the formal county-initiated IAL designation procedure set forth in HRS § 205-47.

reclassification of the Petition lands is reasonably necessary for urban growth."

The LUC argued in its Answering Brief that the reclassification did not violate HRS § 15-15-77(b)(6), because (1) the Project area is designated for urban development in the CO SCP; (2) there is an acute shortage of housing for primary residents on Oahu; (3) and adequate replacement lands exist for agricultural tenants displaced by the project.  The LUC asserted that it did not "simply ignore" testimony that the lands had been in active cultivation, but "considered the specific replacement lands . . . as well as other evidence concerning agriculture in Hawaii in general. . . ."

The circuit court held oral argument.  The circuit court asked the Appellants which particular findings of fact and conclusions of law they believed were in error, as their Opening Brief did not include that information; the Appellants viewed "the entire thing" as in error.  Further into the oral argument, the Appellants' attorney conceded, "We're not challenging the expertise [of individuals who testified before the LUC] because [the LUC is] entitled to make credibility determinations."  After hearing argument from all of the parties, the circuit court dismissed the appeal and affirmed the LUC's decision.

The circuit court issued its Decision and Order Denying and Dismissing Appellants the Sierra Club and Senator Clayton Hee's

15

Appeal Filed on July 20, 2012, on April 11, 2013.  The circuit

court made the following findings relevant to this appeal:

>    7.  The Court, in its review of all the Findings of
> Fact, finds that there is evidence as to the unmet housing
> needs and the availability of other suitable agricultural
> land and the criteria required under HRS § 205-17 and HAR §
> 15-15-77.  The Court finds that the LUC D&O was not
> arbitrary and/or an abuse of discretion in that there was
> substantial, reliable, probative evidence to support its
> Findings of Fact.
>    8.  The Court finds that there was no challenge by
> Appellants as to the credibility or the expertise of the
> various witnesses that testified before the LUC.
>    9.  The Court therefore finds that the LUC did not
> violate HAR § 15-15-77.

The circuit court therefore affirmed the LUC's Findings of Fact

and Conclusions of Law and Decision and Order and dismissed the

appeal.  The Appellants timely appealed, ultimately obtaining a

transfer of the appeal from the ICA to this court.

## III.   Standard of Review

>    Review of a decision made by the circuit court upon its
> review of an agency's decision is a secondary appeal.  The
> standard of review is one in which this court must
> determine whether the circuit court was right or wrong in
> its decision, applying the standards set forth in HRS § 91-
> 14(g) . . . to the agency's decision.

Dep't of Env. Servs. v. Land Use Comm'n, 127 Hawaiʻi 5, 12, 275

P.3d 809, 816 (2012) (citation omitted).  An agency's

conclusions of law are reviewed _de novo_, while an agency's

factual findings are reviewed for clear error.  Camara v.

Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

>    In order to preserve the function of administrative
> agencies in discharging their delegated duties and the
> function of this court in reviewing agency determinations,
> a presumption of validity is accorded to decisions of
> administrative bodies acting within their sphere of
> expertise and one seeking to upset the order bears "the
> heavy burden of making a convincing showing that it is

16

> invalid because it is unjust and unreasonable in its
> consequences."

In re Hawaii Elec. Light Co., 60 Haw. 625, 630, 594 P.2d 612, 617 (1979) (citations omitted).

## IV. Substantial Evidence Supported the LUC's Findings That the Reclassification Complied with HAR § 15-15-77(b)(6).

On the issue of whether the reclassification violated HAR § 15-15-77(b)(6), the parties largely repeat, before this court, the arguments made to the circuit court, and those arguments will not be repeated. Before reaching the merits of the issue, we must address the lack of specificity in Appellants' challenge to the LUC's decision and order. Before the circuit court and this court, the Appellants did not designate any particular findings of fact as clearly erroneous. It was the Appellants' burden, however, to point out specifically which findings of fact and conclusions of law were erroneous. MPM Hawaiian, Inc. v. Amigos, Inc., 63 Haw. 485, 486, 630 P.2d 1075, 1077 (1981) (per curiam) (Findings of fact "are presumed to be correct, and appellant bears the burden of pointing out specifically where they are erroneous.") It should not be this court's responsibility to search the record in this case for evidence supporting the LUC's factual findings. See Campbell v. DePonte, 57 Haw. 510, 513, 559 P.2d 739, 741 (1977) ("An appellant's mere challenge of a finding does not cas[t] the onus of justifying it on this court. The party seeking to overthrow findings has the

burden of pointing out specifically wherein the findings are clearly erroneous.") (citation omitted).

It was clear in this case that the entire decision and order was not at issue in this appeal.  The Appellants focused on the agriculture and urban growth findings, not the introductory findings describing procedural matters, the petition area, the proposal for reclassification, Castle & Cooke's financial capability to undertake the project, or State and City plans; or the hundreds of other findings regarding impacts upon the economy, society, flora, fauna, archaeological, historical, cultural, groundwater and surface water, parks and recreation, and scenic resources; or noise, air quality, highway and roadway facilities, water service, wastewater disposal, drainage, solid waste disposal, schools, police and fire protection, emergency/medical services, civil defense, electricity and telephone service, energy conservation, commitment of state funds and resources, and conformance with State and City land use management plans.

We remind counsel that Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4)(C) (2010) requires that an appellant's opening brief concisely state points of error, and, "when the point involves a finding or conclusion of the . . . agency, either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions. . . ."  This

court has looked past violations of HRAP Rule 28(b)(4) to reach the merits of a case where issues of great importance are at stake.  See, e.g., Morgan v. Planning Dep't, 104 Hawai'i 173, 181, 86 P.3d 982, 990 (2004) ("[B]ecause the issues raised in the instant case are of great importance [i.e., the Hawai'i constitution's recognition of the significance of conserving and protecting Hawaii's natural beauty and natural resources], we address the merits of the issues raised . . . notwithstanding the [Appellants'] technical violation of HRAP Rule 28(b)(4).")  In this case, due to the public interest in the proposed Koa Ridge development, we choose to construe Appellants' appeal as challenging the findings of fact reproduced in Section II.A.4 of this opinion.  Even given this latitude, however, the Appellants fail to carry their burden of showing why the LUC's decision and order should not be affirmed.

The Appellants allege that the LUC improperly weighed the evidence before it in determining that the reclassification of the Petition lands would not substantially impair agricultural production and was reasonably necessary for urban growth.  A court reviewing an agency's findings of fact, however must "decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or . . . review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially

19

the findings of an expert agency dealing with a specialized field." Application of Hawaiian Elec. Co., 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996).  Appellants' attorney acknowledged as much before the circuit court, when he admitted, "We're not challenging the expertise [of individuals who testified before the LUC] because [the LUC is] entitled to make credibility determinations."

As such, the resolution of this issue on appeal depends on whether the witnesses the LUC credited provided substantial evidence to support the LUC's findings of fact.  Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  In Re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000).  In this case, the witness testimony the LUC credited (summarized in Sections II.A.3.a, b, and c of this opinion) provided substantial evidence to support its findings.  Therefore, the reclassification satisfied the requirements of HAR § 15-15-77(b)(6).

**V.   The LUC's Decision and Order Omits a Conclusion that the Preponderance of the Evidence Shows that the Reclassification Does Not Violate Part III of Chapter 205, but the Omission is Harmless.**

HRS § 205-4(h) (Supp. 2005) requires the LUC to approve a proposed boundary amendment only after concluding, by a

preponderance of the evidence, that it is "reasonable, not violative of section 205-2 [governing districting and classification of lands] and part III of this chapter [governing Important Agricultural Lands], and consistent with the policies and criteria established pursuant to sections 205-16 [compliance with the Hawai'i State Plan] and 205-17 [listing other LUC decision-making criteria]."  (Emphasis added).  HAR § 15-15-77 further requires that any approved boundary amendment be consistent with HRS § 205A-2 (Hawaii's Coastal Zone Management Program).  In this case, in Conclusions of Law 1 and 2, the LUC concluded, by a preponderance of the evidence, that the reclassification of the Koa Ridge and Waiawa lands were "reasonable, not violative of HRS section 205-2 and . . . consistent with the policies and criteria established pursuant to HRS sections 205-16, 205-17, and 205A-2."  Conclusions of Law 1 and 2 are erroneous because they omit any conclusion regarding part III of HRS Chapter 205.  Although the Appellants did not challenge these conclusions of law, this court may freely review them.  Ka Pa'akai O Ka'Aina v. Land Use Comm'n, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000).

Under the circumstances of this case, however, this error is harmless because the LUC made separate conclusions to show that it recognized the significance of important agricultural

21

lands under the Hawai'i State Constitution and Part III of

Chapter 205:

> 6.  Article XI, Section 3, of the Hawai'i State Constitution states the following in full:  "The State shall conserve and protect agricultural lands, promote diversified agriculture, increase agricultural self-sufficiency and assure the availability of agriculturally suitable lands. The legislature shall provide standards and criteria to accomplish the foregoing.  Lands identified by the State as important agricultural lands needed to fulfill the purposes above shall not be reclassified by the State or rezoned by its political subdivisions without meeting the standards and criteria established by the legislature and approved by a two-thirds vote of the body responsible for the reclassification or rezoning action."

> 7.  HRS section 205-41 [located in Part III of Chapter 205] declares that there is a compelling State interest in conserving the State's agricultural land resource base and assuring the long-term availability of agricultural lands for agricultural use to achieve the purposes of Article XI, Section 3, of the Hawai'i State Constitution.

Again, we note that the formal county-initiated IAL designation

process has not concluded.  See

http://mapoahuagland.com/about/faq/ (last visited Apr. 5, 2016).

Further, the City & County of Honolulu has no intention of

identifying the Project lands as IAL because they are included

in county plans calling for urban development.  See id.  Under

HRS § 205-47(a), "lands that have been designated, through the

state land use, zoning, or county planning process, for urban

use by the State or county" are not subject to county

identification as IALs.  Thus, under the facts of this case,

reclassification would not be "violative of part III" because

this particular parcel was not, and would not be, identified as

IAL.  We believe these conclusions of law show that the LUC

22

complied with Part III of Chapter 205 to the extent that it could, given the unfinished state of the formal county IAL designation process.

## VI.   Conclusion

The LUC in this case properly reclassified Castle & Cooke's property from the agricultural land use district to the urban land use district.  Substantial evidence supported the LUC's findings that the reclassification satisfied HAR § 15-15-77(b)(6).  The LUC's error in omitting a conclusion of law that the reclassification was not violative of Part III of Chapter 205, by a preponderance of the evidence, was harmless.  We therefore affirm the circuit court's decision and order, which affirmed the LUC's decision and order and dismissed the Appellants' appeal.

DATED:  Honolulu, Hawai'i, April 6, 2016.

Eric A. Seitz and                       /s/ Mark E. Recktenwald
Sarah R. Devine
for petitioners                         /s/ Paula A. Nakayama

Benjamin M. Matsubara                   /s/ Sabrina S. McKenna
and Curtis T. Tabata
for respondent                          /s/ R. Mark Browning
Castle & Cooke
Homes Hawaii, Inc.

Bryan Yee and
Diane Erickson
for respondent
Office of Planning

